UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BROWN, II, | No. 2:17-cv-2371 DB P |
| Plaintiff, | |
| v. | ORDER |
| M. SPEARMAN, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se with a civil rights action under 42 U.S.C. § 1983. Plaintiff has consented to the jurisdiction of a magistrate judge. (ECF No. 4.) Before the court are plaintiff's motion to proceed in forma pauperis ("IFP") and complaint for screening. For the reasons set forth below, the court will grant plaintiff's IFP motion, dismiss the complaint, and give plaintiff leave to file an amended complaint.

**IN FORMA PAUPERIS**

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis will be granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and

1

forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

**SCREENING**

**I.     Legal Standards**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1) & (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Franklin, 745 F.2d at 1227. Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

However, in order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555. In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S.

738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

**II.    Analysis**

    **A.  Allegations of the Complaint**

Plaintiff is a state prisoner currently incarcerated at Duel Vocational Institution. He complains of acts that occurred when he was confined at High Desert State Prison ("HDSP") and California State Prison - Solano ("CSP-Solano") in 2016. He identifies the following defendants from HDSP: (1) M. Spearman, Warden; (2) T. Foss, Chief Deputy Warden; (3) "M.E." or John Doe, Acting Chief Deputy Warden; (4) R. Peery, Associate Warden; (5) H. Anglea, Associate Warden Classification; (6) N. Cimino, Correctional Counselor II; (7) M. Brautigan, Correctional

| | |
|---|---|
| 1 | Lieutenant; (8) C. Fackrell, Correctional Lieutenant; (9) M. Pearson, Correctional Sergeant; (10) |
| 2 | J. Chenoweth, Correctional Sergeant; (11) G. Jones, Correctional Counselor I; (12) K. Wiser, |
| 3 | Correctional Officer – Property and Ad Seg; (13) C. McConner, Litigations Coordinator; and (14) |
| 4 | M. McKernan, Litigations Coordinator. Plaintiff also names two defendants from CSP-Solano: |
| 5 | (1) E. Arnold, Warden; and (2) John/Jane Doe, Mailroom Staff – Correctional Staff. (Compl. |
| 6 | (ECF No. 1) at 2.) |

Plaintiff states that on August 18, 2016, the California Court of Appeal denied his habeas corpus petition. At that time, plaintiff was incarcerated at CSP-Solano. Plaintiff's then attorney mailed a copy of the Court of Appeal's order to plaintiff at CSP-Solano. On August 23, 2016, plaintiff was transferred from CSP-Solano to Administrative Segregation ("Ad Seg") at HDSP. Mailroom staff at CSP-Solano returned the mail to the attorney, apparently because plaintiff had been transferred. (ECF No. 1 at 6-7.) Plaintiff contends returning the mail violated prison policy regarding the confidential legal mail of transferred inmates. (Id. at 15.)

When plaintiff arrived at HDSP, he immediately sought the return of his legal property. He submitted a request to defendant K. Wiser, the property officer for Ad Seg. Plaintiff was told that he could not receive legal property until he had appeared before the Institutional Classification Committee ("ICC"). (ECF No. 1 at 7-8.)

At some point in September 2016, plaintiff was informed that his habeas corpus petition had been denied. Plaintiff submitted grievances explaining that he had court deadlines and needed his legal documents. Because the prison refused to provide his documents, he missed the deadline for filing a petition for review with the California Supreme Court of the denial of his habeas petition. (ECF No. 1 at 8-9.)

The prison also refused to provide him legal supplies – paper, pen, envelopes – for fourteen days after he requested them. Because he did not have supplies, he could not inform his attorney or the courts of his transfer. He further states that the HDSP law library did not contain the appropriate forms to allow him to file the petition for review with the California Supreme Court. (ECF No. 1 at 9, 10-11, 13, 15.)

////

Plaintiff received his legal property on September 13, 2016. However, he was not seen by the ICC until September 23, 2016. (ECF No. 1 at 10.)

Plaintiff did not get access to the law library until September 17, 2016, one day after the deadline for filing a petition for review with the California Supreme Court. He filed a petition for review with the California Supreme Court. It was denied as untimely. (ECF No. 1 at 10.)

**B. Legal Standards for First Amendment Claim of Denial of Access to the Courts**

Generally, prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995). However, there is a "delicate balance" between prisoners' First Amendment rights and the discretion given to prison administrators to govern the order and security of the prison. Thornburgh v. Abbott, 490 U.S. 401, 407-08 (1989). A prison may adopt regulations or practices for incoming mail which impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). The Turner standard applies to regulations and practices concerning all correspondence between prisoners and to regulations concerning incoming mail received by prisoners from non-prisoners. Thornburgh, 490 U.S. at 413.

With respect to outgoing legal mail, prisoners have a constitutional right of access to the courts. See Lewis, 518 U.S. at 346; Bounds v. Smith, 430 U.S. 817, 821 (1977). The right, however, "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Lewis, 518 U.S. at 356–57. In order to state a denial of access claim under the First Amendment, a prisoner must allege that he suffered an "actual injury" as a result of the defendants' alleged actions, by explaining how the challenged official acts or omissions hindered plaintiff's efforts to pursue a nonfrivolous legal claim. Lewis, 518 U.S. at 351–55. Actual injury may be shown if the alleged shortcomings "hindered his efforts to pursue a legal claim," such as having his complaint dismissed "for failure to satisfy some technical requirement," or if he "suffered arguably actionable harm that he wished to bring before the courts." Id. at 351.

The right of access to the courts applies to nonfrivolous direct criminal appeals, habeas corpus proceedings, and section 1983 actions. Id. at 353 n.3, 354–55. Where a prisoner asserts a

backward-looking denial of access claim—one seeking a remedy for a lost opportunity to present a legal claim—he must show the loss of a "nonfrivolous" or "arguable" underlying claim, "the official acts frustrating the litigation," and "a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." Christopher v. Harbury, 536 U.S. 403, 415, 417 (2002).

### C. Has Plaintiff Stated Cognizable Claims re Denial of Access to the Courts?

The gist of plaintiff's complaint is that (1) a CSP-Solano employee failed to forward his legal mail to him at HDSP and (2) HDSP employees then failed to give him his legal materials in a timely manner. As a result, plaintiff was unaware that the California Court of Appeal had denied his habeas corpus petition and was unable to prepare a petition for review to the California Supreme Court within the required thirty days. When it received his petition for review on October 14, 2016, the California Supreme Court refused to file it because the window for filing a petition expired on September 19, 2016. (See ECF No. 1 at 103.)

The primary problem with plaintiff's complaint is that he fails to specify what almost every defendant did prior to September 19, 2016 that affected plaintiff's ability to file a timely petition for review. Plaintiff makes mostly vague allegations against almost all of the defendants. His attachments make clear that many of them were involved only in reviewing plaintiff's grievances and appeals after September 19, 2016. Therefore, their conduct could not have affected plaintiff's ability to file a timely petition for review. Those defendants whose conduct appears to have come too late are:

1. Peery, who denied plaintiff's two grievances at the first level of review on October 11, 2016 and December 3, 2016 (ECF No. 1 at 69-71, 97-99);
2. Pearson, who interviewed plaintiff on October 10, 2016 for the prison's first level response to plaintiff's first grievance (ECF No. 1 at 69);
3. Brautigan, who interviewed plaintiff for the prison's second level response of his first appeal sometime after October 10, 2016 (ECF No. 1 at 67); and
4. Foss, who denied plaintiff's first two grievances at the second level on December 14, 2016 and January 10, 2017 (ECF No. 1 at 66-68, 95-97).

With respect to other defendants, plaintiff's allegations are too vague to state a claim. Plaintiff makes identical, non-specific allegations that defendants Jones, Cimino, McKernan, McConner, Anglea, "M.E.," Chenowith, and Fackrell "intentionally and deliberately" prevented plaintiff from obtaining his legal materials. (See ECF No. 1 at 21-24, 28-31, 34-35, 41-43, 47-52.) If these defendants took actions that prevented plaintiff from receiving his legal materials prior to September 19, 2016, then he must describe just what each defendant did, or did not do, and when that action or inaction took place in order to state a claim against that defendant.

Plaintiff does state at least part of a claim against defendant Wiser. As described above, to state a claim for interference with access to the courts, plaintiff must allege: (1) the loss of a non-frivolous or arguable underlying claim; (2) the official acts that frustrated the litigation of that claim; and (3) a remedy that may be awarded in this case but is not otherwise available in a future suit. See Christopher, 536 U.S. at 415, 417. Plaintiff contends that he submitted a request for his property to Wiser, was not provided his property, and was told he could not receive legal property until he had appeared before the Institutional Classification Committee ("ICC"). Later, however, he was provided his property prior to his ICC hearing. Plaintiff also seeks damages as a remedy, something not available through any future habeas corpus petition. See Sprinkle v. Robinson, No. 2:02-cv-1563 JAM EFB P, 2017 WL 1079833, at *7 (E.D. Cal. Mar. 22, 2017) (recognizing that some damages may be available for a § 1983 claim of denial of the ability to pursue a habeas petition), rep. and reco. adopted, 2017 WL 2812973 (E.D. Cal. June 29, 2017). However, plaintiff must also show that a claim he tried to raise before the California Supreme Court is "nonfrivolous" or "arguable." Plaintiff has not done so.

Finally, plaintiff's allegations against the mailroom staff person at CSP-Solano, defendant "Doe," are simply that defendant Doe failed to comply with prison policy regarding prisoner's legal mail. Plaintiff does not explain that policy or show why defendant Doe's actions demonstrate an interference with his access to the courts. Plaintiff must provide more information in order to state a claim against defendant Doe.

////

////

**D. Has Plaintiff Stated Cognizable Claims for Failure to Train?**

Plaintiff alleges both wardens, defendant Spearman at HDSP and defendant Arnold at CSP-Solano, failed to train their staff which resulted in the mail problems and the delay in obtaining his legal materials. (See ECF No. 1 at 17-19; 53-54.)

To establish a failure-to-train claim, a plaintiff must show that "'in light of the duties assigned to specific officers or employees, the need for more or different training [was] obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers . . . can reasonably be said to have been deliberately indifferent to the need.'" Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989)). A plaintiff must allege facts showing the failure to train resulted from a defendant's "deliberate" or "conscious" choice and that a sufficient causal connection exists between the supervisor's wrongful conduct and the alleged constitutional violation. Canell v. Lightner, 143 F.3d at 1213 (citation omitted).

Ordinarily, a single constitutional violation by an untrained employee is insufficient to demonstrate deliberate indifference for purposes of failure to train. Connick v. Thompson, 563 U.S. 51, 62 (2011). Instead, a plaintiff must usually demonstrate "[a] pattern of similar constitutional violations by untrained employees." Id. In a failure-to-train case, however, a plaintiff need not always prove that there have been repeated violations. Even in the absence of a prior pattern of constitutional violations, Canton instructs that in some situations the need for training is "so obvious" and "so likely to result in the violation of constitutional rights," that "the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." Canton, 489 U.S. at 390. In the rare case, "a particular showing of obviousness can substitute for the pattern of violations ordinarily necessary to establish municipal culpability." Wereb v. Maui Cnty., 830 F. Supp. 2d 1026, 1032 (D. Hawaii 2011) (quoting Connick, 563 U.S. at 64). If a violation of a protected right is a "highly predictable consequence" of a decision not to train, it is possible to establish a "failure in a . . . training program . . . so obviously deficient that it could lead to liability for damages resulting from a single violation." Id. A complete absence of training

supports an inference of deliberate indifference.  Connick, 563 U.S. at 67–68 (quoting Canton, 489 U.S. at 391).

Plaintiff's allegations against the warden defendants are simply that they failed to train their staff with respect to forwarding legal mail, issuing legal documents to prisoners in Ad Seg, providing prisoners with legal supplies, and maintaining an adequate law library.  These allegations are too broad and non-specific to state a failure-to-train claim.  See Edgerly v. City & Cnty. of S.F., 599 F.3d 946, 962 (9th Cir. 2010) (dismissing supervisory liability claim when no facts "suggest [Sheriff] provided any training to Officers...., or that he was responsible for providing formal training to any officers.").  Plaintiff's simple statements that these warden defendants had a "duty" to supervise and train their staff and failed to do so is insufficient to state a claim for failure to supervise or train.  Further, plaintiff has not shown a pattern of misconduct or an obvious need for training that was ignored by the wardens.  Plaintiff's allegations against the wardens are so broad that they could be applied to any misconduct by prison staff.  Plaintiff fails to state claims cognizable under § 1983 against the warden defendants.

### E.  Has Plaintiff Stated a Cognizable Claim for Retaliation?

In various parts of his complaint, plaintiff alleges the actions of defendants were motivated by retaliation for plaintiff's placement in Ad Seg.  Plaintiff is advised that to state a claim for retaliation, he must show:  "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and citations omitted).  Here, plaintiff does not allege that he engaged in any "protected conduct" that resulted in retaliation.  Actions that resulted in placement in Ad Seg or the fact that plaintiff was in Ad Seg are not conduct protected by the First Amendment.

### FILING AN AMENDED COMPLAINT

As set out above, plaintiff fails to state cognizable claims against any defendant.  He will be given an opportunity to do so.

////

Plaintiff is advised that in an amended complaint he must clearly identify each defendant and the action that defendant took that violated his constitutional rights. The court is not required to review exhibits to determine what plaintiff's charging allegations are as to each named defendant. If plaintiff wishes to add a claim, he must include it in the body of the complaint. The charging allegations must be set forth in the amended complaint so defendants have fair notice of the claims plaintiff is presenting. That said, plaintiff need not provide every detailed fact in support of his claims. Rather, plaintiff should provide a short, plain statement of each claim. See Fed. R. Civ. P. 8(a).

Any amended complaint must show the federal court has jurisdiction, the action is brought in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true. It must contain a request for particular relief. Plaintiff must identify as a defendant only persons who personally participated in a substantial way in depriving plaintiff of a federal constitutional right. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation).

In an amended complaint, the allegations must be set forth in numbered paragraphs. Fed. R. Civ. P. 10(b). Plaintiff may join multiple claims if they are all against a single defendant. Fed. R. Civ. P. 18(a). If plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs. Fed. R. Civ. P. 10(b).

The federal rules contemplate brevity. See Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)"); Fed. R. Civ. P. 84; cf. Rule 9(b) (setting forth rare exceptions to simplified pleading). Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8.

An amended complaint must be complete in itself without reference to any prior pleading. E.D. Cal. R. 220. Once plaintiff files an amended complaint, all prior pleadings are superseded.

1       By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and has evidentiary support for his allegations, and for violation of this rule the court may impose sanctions sufficient to deter repetition by plaintiff or others.  Fed. R. Civ. P. 11.

      For the foregoing reasons, and good cause appearing, IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion to proceed in forma pauperis (ECF No. 2) is granted.
2. Plaintiff's complaint is dismissed with leave to amend.
3. Plaintiff is granted thirty days from the date of service of this order to file an amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice.  The amended complaint must bear the docket number assigned this case and must be labeled "First Amended Complaint."  Plaintiff's failure to file an amended complaint within the time provided, or otherwise respond to this order, may result in a recommendation that this case be dismissed.
4. The Clerk of the Court is directed to send plaintiff a copy of the prisoner complaint form used in this district.

Dated: May 17, 2018

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DB/prisoner-civil rights/brow2371.scrn