UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM BROWN, II,

    Plaintiff,

v.

M. SPEARMAN, et al.,

    Defendants.

No. 2:17-cv-2371 DB P

ORDER

Plaintiff is a state prisoner proceeding pro se with a civil rights action under 42 U.S.C. § 1983. Before the court is plaintiff's First Amended Complaint ("FAC") for screening. For the reasons set forth below, the court will dismiss the FAC with leave to amend.

**SCREENING**

**I.    Legal Standards**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1) & (2).

////

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

However, in order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555. In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

**II.     Analysis**

   **A. Allegations of the FAC**

Plaintiff is a state prisoner currently incarcerated at Duel Vocational Institution. He complains of acts that occurred when he was confined at High Desert State Prison ("HDSP") and California State Prison - Solano ("CSP-Solano") in 2016. He identifies the following defendants from HDSP: (1) M. Spearman, Warden; (2) Correctional Officer Wiser; (3) "OT" McKernan; (4) McConnor; and (5) Doe defendants. Plaintiff also names Doe defendants from CSP-Solano: (FAC (ECF No. 12 at 1-2).)

Plaintiff states that on August 2, 2016, he was placed in administrative segregation ("ad seg") at CSP-Solano. At that time, he had pending criminal cases – an appeal of his conviction in the California Court of Appeal, Sixth Appellate Division, and two habeas corpus petitions also pending in that court. (FAC (ECF No. 12 at 14).) On August 18, 2016, the Court of Appeal denied his appeal and habeas petitions.[1] At the same time, plaintiff also had a pending tort case in Amador County Superior Court. (Id. at 15.)

On August 23, 2016, plaintiff was transferred to HDSP and placed in the ad seg unit there. That same day he submitted a request to the HDSP property officer for his legal property. (FAC

---

[1] The Court of Appeal's denial of plaintiff's direct appeal is People v. Brown, No. H040734, 2016 WL 4395670 (Cal. Ct. App. Aug. 18, 2016). According to the court's decision, plaintiff had also filed two petitions for writs of habeas corpus. 2016 WL 4395670, at *1. However, plaintiff states that he only wished to move forward in the California Supreme Court with one of those petitions, no. H048878. (FAC (ECF No. 12 at 14).) According to the Court of Appeal's docket, it summarily denied that habeas petition. In re William Brown, No. H048878 (Order dated Aug. 18, 2016.) The docket can be found at: http://appellatecases.courtinfo.ca.gov.

(ECF No. 12 at 15, 26).) In that request, plaintiff explained that he had a court appearance by telephone set to take place on August 24, 2016 before the Amador County Superior Court. (Id. at 26.) Defendant Wiser returned the form to plaintiff on August 25. Wiser told him that plaintiff would not receive his property until he had been seen by the "Initial Classification Committee (ICC)" or by the facility captain. (Id. at 15, 26.) Plaintiff then submitted an administrative appeal in which he argued that he required his legal property due to deadlines in his tort case. (Id. at 16, 26.) Plaintiff argues Wiser's actions were a deliberate and malicious attempt to interfere with plaintiff's access to the courts. (Id. at 36.)

On September 1, 2016, plaintiff submitted a request to the litigation coordinator for assistance with obtaining his legal property. He explained that he needed to be able to schedule a court appearance through a telephone call in his state tort case. He received a response from defendant McKernan on September 6. However, McKernan did not help in any way. Plaintiff resubmitted the request on September 11 and on September 14 received a response from defendant McConnor that similarly failed to provide any assistance. (FAC (ECF No. 12 at 16, 38).) Plaintiff contends these actions violated regulations requiring that inmates in ad seg "not be limited in their access to the courts" and that legal material may be issued to an inmate in ad seg if he was in the process of litigation and has imminent legal due dates. (Id. at 24-25.)

On September 7, plaintiff was issued writing supplies for the first time while at HDSP. (FAC (ECF No. 12 at 17).) He argues that waiting until that date to provide him with writing supplies delayed his ability to inform his attorney and the courts of his change of address. (Id. at 28.) Plaintiff contends this also violated prison regulations. (Id. at 29-30.) He further contends that defendant Warden Spearman failed to properly train and educate his staff about providing inmates with the necessary stationary to notify courts and attorneys of their whereabouts. (Id. at 35.)

On September 12, plaintiff received a letter from his attorney that his appeal and habeas had been denied by the Court of Appeal on August 18. (FAC (ECF No. 12 at 17).) Plaintiff's attorney informed him that she was unaware he had been moved and had sent the letter to CSP-Solano originally. (Id.) However, it was returned to her by mailroom staff at CSP-Solano.

4

Plaintiff alleges mailroom staff violated prison policy requiring them to "immediately forward" mail received for a prisoner who has been transferred to a new facility. (Id. at 19-20.) Then, on September 13, plaintiff was issued his legal property. Plaintiff argues that this fact contradicts the statement by Wiser that he had to wait because plaintiff was not scheduled to go before the ICC until September 23. (Id. at 16.)

Plaintiff attempted to obtain a Judicial Council form at the law library in HDSP's ad seg unit to submit a habeas corpus petition to the California Supreme Court. He appears to allege that this occurred on September 17, 2016, his first opportunity to access the law library. (FAC (ECF No. 12 at 29).) The library had no such forms and plaintiff sent the warden a notice informing him of this problem on October 2, 2016. (Id. at 18, 21.) Plaintiff contends the warden violated regulations requiring that he "ensure a library, law library, and related services are maintained for the benefit of all individuals in [his] facility, including those individuals confined to segregated units." (Id. at 21.) And, further, that the library shall provide materials so that prisoners have "meaningful access to the courts." (Id. at 22.) He states that on October 7, he was in the ad seg law library and saw a senior librarian providing access to Judicial Council forms. (Id.)

Plaintiff states that his petition for writ of habeas corpus was denied as untimely by the California Supreme Court. The petition challenged his conviction for assault with a deadly weapon. (FAC (ECF No. 12 at 23).) Plaintiff states that the argument in his habeas petition was that his crime did not satisfy the standards of Penal Code §§ 1192.7[2] and 245(a)(1)[3] to be considered a serious felony. Apparently because plaintiff's petition was denied as untimely, plaintiff states that he was unable to bring that claim in his federal petition for writ of habeas

---

[2] Cal. Penal Code § 1192.7 deals with limitations on plea bargaining for "serious crimes" among others. Subsection (c) defines a "serious felony" as any in a list of 42 crimes. Plaintiff appears to be referring to the crime listed as number (8) "any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice, or any felony in which the defendant personally uses a firearm."

[3] Cal. Penal Code § 254(a)(1) states: "Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment."

corpus, which is now pending in the Northern District of California, Brown v. Sutton, No. 3:17-cv-04827 JST.

Plaintiff seeks declaratory and injunctive relief and compensatory and punitive damages. (ECF No. 12 at 13, 34-39.)

**B. Legal Standards for First Amendment Claim of Denial of Access to the Courts**

Generally, prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995). However, there is a "delicate balance" between prisoners' First Amendment rights and the discretion given to prison administrators to govern the order and security of the prison. Thornburgh v. Abbott, 490 U.S. 401, 407-08 (1989). A prison may adopt regulations or practices for incoming mail which impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). The Turner standard applies to regulations and practices concerning all correspondence between prisoners and to regulations concerning incoming mail received by prisoners from non-prisoners. Thornburgh, 490 U.S. at 413.

With respect to outgoing legal mail, prisoners have a constitutional right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977). The right, however, "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Lewis, 518 U.S. at 356–57. In order to state a denial of access claim under the First Amendment, a prisoner must allege that he suffered an "actual injury" as a result of the defendants' alleged actions, by explaining how the challenged official acts or omissions hindered plaintiff's efforts to pursue a nonfrivolous legal claim. Lewis, 518 U.S. at 351–55. Actual injury may be shown if the alleged shortcomings "hindered his efforts to pursue a legal claim," such as having his complaint dismissed "for failure to satisfy some technical requirement," or if he "suffered arguably actionable harm that he wished to bring before the courts." Id. at 351.

////

////

The right of access to the courts applies to nonfrivolous direct criminal appeals, habeas corpus proceedings, and section 1983 actions. Lewis, 518 U.S. at 353 n.3, 354–55. Where a prisoner asserts a backward-looking denial of access claim—one seeking a remedy for a lost opportunity to present a legal claim—he must show the loss of a "nonfrivolous" or "arguable" underlying claim, "the official acts frustrating the litigation," and "a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." Christopher v. Harbury, 536 U.S. 403, 415, 417 (2002).

### C. Has Plaintiff Stated Cognizable Claims re Denial of Access to the Courts?

Plaintiff alleges that (1) a CSP-Solano employee failed to forward his legal mail to him at HDSP; (2) HDSP employees then failed to give him his legal materials in a timely manner; (3) HDSP employees also failed to provide him with writing materials; and (4) the law library at the HDSP ad seg unit was inadequate. As a result of these problems, plaintiff was unable to follow up with his state court tort proceeding and was unable to timely notify the courts and his attorney of his address change. Due to his inability to send an address change, plaintiff did not know that the California Court of Appeal had denied his habeas corpus petition. Therefore he was unable to prepare a petition for review or habeas corpus petition to the California Supreme Court within the required time period. While it is not attached to his current complaint, in his prior complaint, plaintiff included a copy of the California Supreme Court's letter stating that it had received his petition for review on October 14, 2016, but could not file it because the window for filing expired on September 19, 2016. (See ECF No. 1 at 103.)

Initially, the court clarifies two legal standards. First, to the extent plaintiff is alleging any defendants interfered with his state tort proceeding, that claim is not protected by the First Amendment. See Lewis, 518 U.S. at 353 n.3, 354-55 (claim of interference of right of access to the court is limited to nonfrivolous direct criminal appeals, habeas corpus proceedings, and section 1983 actions). Therefore, plaintiff's claims must all allege interference with his ability to bring his habeas petition in the California Supreme Court. Second, while plaintiff alleges defendants violated multiple regulations, that is not the standard for a claim under § 1983. Rather, plaintiff must show a violation of his constitutional rights. See DeShaney v. Winnebago

7

Co. Soc. Servs. Dep't, 489 U.S. 189, 201-03 (1989) (section 1983 does not impose liability for violations of state law); Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009) (a failure to comply with prison regulations does not establish a federal constitutional violation).

With respect to plaintiff's claims against each defendant, plaintiff fails to demonstrate the unnamed CSP-Solano defendants have liability under the First Amendment. Plaintiff must show that each defendant intentionally and actively misused his or her power to deny plaintiff access to the courts. "The right of access to the courts does not permit recovery for careless or negligent acts." Funches v. Ebbert, 638 F. Supp. 2d 1014, 1019 (S.D. Ill. 2009) (citing Daniels v. Williams, 474 U.S. 327 (1986)); see also Roman v. Allison, No. 1:11-cv-0730-MJS (PC), 2012 WL 293380, at *2 (E.D. Cal. Jan. 31, 2012). While it is unfortunate that CSP-Solano mailroom staff did not comply with prison regulations, there is nothing in plaintiff's complaint to support his allegation that the misdirection of his mail was anything other than carelessness or negligence. Accordingly, plaintiff's claims against the Doe defendants at CSP-Solano will be dismissed.

With respect to defendant McConnor, plaintiff fails to show any action by McConnor caused him injury. Plaintiff states that on September 11 he resubmitted a request to the litigation coordinator for his legal materials. Two days later, on September 13, he received those materials. While plaintiff does not explain just what response he received from McConnor on September 14, he cannot show he suffered injury as a result of any action by McConnor because he did, in fact, receive his legal materials just two days after resubmitting his second request for them. Plaintiff fails to demonstrate any action by McConnor contributed to the lost opportunity to file a habeas petition with the California Supreme Court.

With respect to defendants Wiser and McKernan, as plaintiff has been informed previously, to state a claim for interference with access to the courts, plaintiff must allege: (1) the loss of a non-frivolous or arguable underlying claim; (2) the official acts that frustrated the litigation of that claim; and (3) a remedy that may be awarded in this case but is not otherwise available in a future suit. See Christopher, 536 U.S. at 415, 417. Plaintiff has satisfied the third factor – he seeks damages, something not available through any future habeas corpus petition. See Sprinkle v. Robinson, No. 2:02-cv-1563 JAM EFB P, 2017 WL 1079833, at *7 (E.D. Cal.

Mar. 22, 2017) (recognizing that some damages may be available for a § 1983 claim of denial of the ability to pursue a habeas petition), rep. and reco. adopted, 2017 WL 2812973 (E.D. Cal. June 29, 2017). However, plaintiff has not alleged sufficient facts to satisfy the remaining factors.

Plaintiff fails to allege facts to satisfy factor #2. He does not show that actions of Wiser and McKernan contributed to his inability to litigate his habeas claim. Plaintiff states that the requests to those defendants explained plaintiff's needs with respect to his state court tort action. Therefore, to the extent Wiser and McKernan intentionally frustrated plaintiff's access to the courts, it was interference with plaintiff's tort action, which may not provide the basis for a First Amendment claim here.

Further, plaintiff did not learn about the California Court of Appeal's denial of his appeal and habeas petitions when he received his legal materials. Rather, he learned about the denials when he received the letter from his attorney on September 12, 2016. Therefore, the failures of Wiser and McKernan to help plaintiff obtain his legal materials did not contribute to his lack of notice that his appeal and habeas had been denied. Plaintiff received his legal materials the next day, on September 13, which would have permitted him to begin preparing a petition for review or habeas corpus petition to the California Supreme Court.

Plaintiff also fails to sufficiently describe his state habeas corpus claim to permit the court to determine whether it is "nonfrivolous" or "arguable" as required by factor #1. Plaintiff does not explain how Penal Code § 1192.7, which involves limitations on plea bargains, applies to his criminal case.

Finally, to the extent plaintiff is alleging that the failure to provide him with paper and pens until September 7 contributed to his lack of access to the courts, plaintiff does not identify who is responsible for that failure. While plaintiff generally states that he asked for those supplies before September 7, he does not identify who he asked to provide them and who refused to do so.

////

////

////

**D. Has Plaintiff Stated Cognizable Claims for Failure to Train?**

Plaintiff alleges defendant Spearman, the warden at HDSP, failed to train staff which resulted in the delay in filing his habeas petition with the California Supreme Court. (See ECF No. 1 at 17-19; 53-54.)

To establish a failure-to-train claim, a plaintiff must show that "'in light of the duties assigned to specific officers or employees, the need for more or different training [was] obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers . . . can reasonably be said to have been deliberately indifferent to the need.'" Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989)). A plaintiff must allege facts showing the failure to train resulted from a defendant's "deliberate" or "conscious" choice and that a sufficient causal connection exists between the supervisor's wrongful conduct and the alleged constitutional violation. Canell v. Lightner, 143 F.3d at 1213 (citation omitted).

Ordinarily, a single constitutional violation by an untrained employee is insufficient to demonstrate deliberate indifference for purposes of failure to train. Connick v. Thompson, 563 U.S. 51, 62 (2011). Instead, a plaintiff must usually demonstrate "[a] pattern of similar constitutional violations by untrained employees." Id. In a failure-to-train case, however, a plaintiff need not always prove that there have been repeated violations. Even in the absence of a prior pattern of constitutional violations, Canton instructs that in some situations the need for training is "so obvious" and "so likely to result in the violation of constitutional rights," that "the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." Canton, 489 U.S. at 390. In the rare case, "a particular showing of obviousness can substitute for the pattern of violations ordinarily necessary to establish municipal culpability." Wereb v. Maui Cnty., 830 F. Supp. 2d 1026, 1032 (D. Hawaii 2011) (quoting Connick, 563 U.S. at 64). If a violation of a protected right is a "highly predictable consequence" of a decision not to train, it is possible to establish a "failure in a . . . training program . . . so obviously deficient that it could lead to liability for damages resulting from a single violation." Id. A complete absence of training

supports an inference of deliberate indifference.  Connick, 563 U.S. at 67–68 (quoting Canton, 489 U.S. at 391).

Plaintiff's allegations against Spearman are simply that he failed to train staff with respect to issuing legal documents to prisoners in ad seg, providing prisoners with legal supplies, and maintaining an adequate law library.  These allegations are too broad and non-specific to state a failure-to-train claim.  See Edgerly v. City & Cnty. of S.F., 599 F.3d 946, 962 (9th Cir. 2010) (dismissing supervisory liability claim when no facts "suggest [Sheriff] provided any training to Officers...., or that he was responsible for providing formal training to any officers.").  Plaintiff's simple statements that Spearman had a "duty" to supervise and train staff and failed to do so is insufficient to state a claim for failure to supervise or train.  Further, plaintiff has not shown a pattern of misconduct or an obvious need for training that was ignored by Warden Spearman.  Plaintiff's allegations against defendant Spearman are so broad that they could be applied to any misconduct by prison staff.  Plaintiff fails to state claims cognizable under § 1983 against defendant Spearman.

## FILING AN AMENDED COMPLAINT

As set out above, plaintiff fails to state cognizable claims against any defendant.  He will be given one final opportunity to do so.

Plaintiff is advised that in an amended complaint he must clearly identify each defendant and the action that defendant took that violated his constitutional rights.  The court is not required to review exhibits to determine what plaintiff's charging allegations are as to each named defendant.  If plaintiff wishes to add a claim, he must include it in the body of the complaint.  The charging allegations must be set forth in the amended complaint so defendants have fair notice of the claims plaintiff is presenting.  That said, plaintiff need not provide every detailed fact in support of his claims.  Rather, plaintiff should provide a short, plain statement of each claim.  See Fed. R. Civ. P. 8(a).

Any amended complaint must show the federal court has jurisdiction, the action is brought in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true.  It must contain a request for particular relief.  Plaintiff must identify as a defendant only persons who

personally participated in a substantial way in depriving plaintiff of a federal constitutional right. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation).

In an amended complaint, the allegations must be set forth in numbered paragraphs. Fed. R. Civ. P. 10(b). Plaintiff may join multiple claims if they are all against a single defendant. Fed. R. Civ. P. 18(a). If plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs. Fed. R. Civ. P. 10(b).

The federal rules contemplate brevity. See Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)"); Fed. R. Civ. P. 84; cf. Rule 9(b) (setting forth rare exceptions to simplified pleading). Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8.

An amended complaint must be complete in itself without reference to any prior pleading. E.D. Cal. R. 220. Once plaintiff files an amended complaint, all prior pleadings are superseded.

By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and has evidentiary support for his allegations, and for violation of this rule the court may impose sanctions sufficient to deter repetition by plaintiff or others. Fed. R. Civ. P. 11.

For the foregoing reasons, and good cause appearing, IT IS HEREBY ORDERED as follows:

1. Plaintiff's first amended complaint is dismissed with leave to amend.
2. Plaintiff is granted thirty days from the date of service of this order to file an amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice. The amended complaint must bear the docket number assigned this case and must be labeled "Second` Amended Complaint." Plaintiff's failure to file an amended complaint within the time

provided, or otherwise respond to this order, may result in a recommendation that this case be dismissed.

3. The Clerk of the Court is directed to send plaintiff a copy of the prisoner complaint form used in this district.

Dated: October 25, 2018

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DB/prisoner-civil rights/brow2371.FAC scrn